**SO ORDERED.**

**SIGNED this 12 day of May, 2022.**

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **GEORGE RONALD CRAWFORD,** | **21-01296-5-JNC** |
| Debtor | **CHAPTER 13** |

| | |
|---|---|
| **SELECT BANK & TRUST COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Adversary Proceeding** |
| **vs.** ) | **No.: 21-00092-5-JNC** |
| ) | |
| **GEORGE RONALD CRAWFORD,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER REGARDING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Before the court is defendant George Ronald Crawford's Motion to Dismiss the Amended Complaint (Dkt. 23) filed by Select Bank & Trust Company ("Select Bank"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012. A hearing in the matter was noticed for and held on April 13, 2022. David F. Mills appeared and argued on behalf of the Defendant, and Paul A. Fanning appeared and argued on behalf of Select Bank.

Mr. Crawford filed a voluntary petition for relief under chapter 12 of the Bankruptcy Code

on June 4, 2021 (Case No. 21-01296-5-JNC). Select Bank filed its original complaint (Dkt. 1; the "Complaint") in this adversary proceeding on September 21, 2021, seeking a determination that Mr. Crawford's debt owed to Select Bank should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). Mr. Crawford filed an Answer to the Complaint and Motion to Dismiss (Dkt. 3), Memorandum of Law in Support of Motion to Dismiss (Dkt. 4), and Motion to Dismiss the Adversary Proceeding (Dkt. 6). Select Bank filed a response opposing the first motion to dismiss (Dkt. 7). A hearing thereon was held on January 12, 2022. At the hearing, an oral motion to amend was made by the plaintiff, which was granted in open court. A written order granting leave to amend was filed on January 12, 2022. (Dkt. 15).

Select Bank filed its Amended Complaint on February 11, 2022 (Dkt. 19; the "Amended Complaint"), asserting supplemental factual allegations and additional claims under 11 U.S.C. § 523(a)(2) and (a)(4). On March 10, 2022, Mr. Crawford filed a Motion to Dismiss all claims contained in the Amended Complaint (Dkt. 23; the "Motion to Dismiss"), supported by a Memorandum of Law (Dkt. 24). He also filed his Answer to Amended Complaint (Dkt. 25). Select Bank filed a response to the Motion to Dismiss on March 31, 2022 (Dkt. 26).

## BACKGROUND[1]

Mr. Crawford has farmed for decades, having participated in row crop farming, custom farming, hog farm operations, custom harvesting, other contract farm work, and fee-for service equipment maintenance and repairs for other farmers (Dkt. 19 ¶ 9). In early 2017, Mr. Crawford sought an extension of credit from Select Bank for the purpose of conducting his farming operations (Dkt. 19 ¶ 10). Before approving and making the loan, Select Bank hired Blue Water

---

[1] All facts alleged in the Amended Complaint are viewed in the light most favorable to the non-moving party, here Select Bank, for purposes of this motion to dismiss analysis. The court makes no findings of fact herein binding for any other aspect of this case.

Ag Group, Inc. ("Blue Water Ag") to inspect and appraise farm equipment offered as collateral for the loan (Dkt. 19 ¶ 12). Blue Water Ag produced a report which assigned the purported equipment collateral a fair market value of $1,021,750 (Ex. A, Dkt. 19 ¶ 13-15).

On March 7, 2017, Mr. Crawford executed and delivered to Select Bank a Promissory Note in the original principal amount of $199,980 (the "Term Note") (Ex. C, Dkt. 19 ¶ 21). The same day, he executed a commercial security agreement (the "2017 Security Agreement"), which granted Select Bank a blanket security interest in "accounts and other rights to payment, inventory, equipment, instruments and chattel paper, general intangibles, documents, farm products and supplies (including crops), government payments and programs, investment property, deposit accounts, crop insurance proceeds, proceeds of other insurance policies relating to the foregoing, and any other proceeds of the foregoing" (collectively, the "Collateral") (Ex. D, Dkt. 19 ¶ 24). Mr. Crawford executed an extension and modification agreement of the Term Note on May 21, 2020 (Ex. F, Dkt. 19 ¶ 32). As of the petition date, the balance due under the Term Note and its extensions (collectively the "Term Note Loans") was the sum of $111,138.26 (Dkt. 19 ¶ 36).

In early 2018, Mr. Crawford sought additional credit from Select Bank in the form of an operating line of credit (Dkt. 19 ¶ 37). He executed and delivered to it a Promissory Note in the original principal amount of $925,000 on February 21, 2018 (the "Credit Line Note") (Ex. H, Dkt. 19, ¶ 42). As security for the Credit Line Note, Mr. Crawford executed a commercial security agreement granting Select Bank an additional security interest in the Collateral and any proceeds thereof (Ex. I, Dkt. 19 ¶ 45).

Select Bank perfected its security interests in the Collateral by filing UCC Financing Statements on March 8, 2017 and February 22, 2018 (Dkt. 19 ¶¶ 30 and 51). Mr. Crawford subsequently executed and delivered to Select Bank four separate change of term agreements,

which effectively modified his payment obligations under the Credit Line Note on March 21, 2019; June 21, 2019; January 20, 2020; and on May 21, 2020 (Dkt. 19. ¶¶ 55, 57, 59, and 70). As of the Petition Date, the balance of the indebtedness under the Credit Line Note and its subsequent modifications totaled $721,877.34 (Dkt. 19 ¶ 74).

Select Bank engaged Dale W. Young to re-inspect and re-appraise the farm equipment identified in the 2017 Appraisal as Collateral for Select Bank (Dkt. 19 ¶ 62). Mr. Young inspected the farm equipment located on Mr. Crawford's farm on February 24, 2020 (Dkt. 19 ¶ 63). Mr. Crawford was physically present during the inspection (Dkt. 19 ¶ 64), and he represented to Mr. Young that he owned all the farm equipment on site (Dkt. 19 ¶ 65). Mr. Young produced an appraisal report (the "2020 Appraisal") that assigned the equipment an aggregate fair market value of $835,400 (Dkt. 19 ¶ 66, Ex. O). Certain pieces of the equipment included in the 2017 Blue Water Ag Appraisal were not included in the 2020 Appraisal and were listed by Mr. Young as "unable to locate." (Dkt. 19 ¶ 69). The missing and unaccounted for equipment had appraised for a total of $362,800 (Dkt. 19 ¶ 82). The Amended Complaint identifies numerous pieces of equipment that were inspected and appraised in the 2020 Appraisal that are not included in Mr. Crawford's Schedules and Statement of Financial Affairs in this bankruptcy case and were not located or recovered by Select Bank prepetition (Dkt. 19 ¶ 83).

In addition, Mr. Crawford received various government program and crop insurance payments for the 2018, 2019, and 2020 crop years (Dkt. 19 ¶ 88). His crop insurance provider, Ace Property and Casualty Insurance Company, provided documents indicating they paid Mr. Crawford crop insurance proceeds in the aggregate amount of $506,391 during 2019 and 2020 (Dkt. 19 ¶ 91-92; Ex. S). However, documents produced by Mr. Crawford in a Bankruptcy Rule 2004 examination document request approved by the court disclose his receipt of crop insurance

proceeds of only $256,320 during years 2019 and 2020 (Dkt. 3 ¶ 91; Exhibit S). These amounts were not paid or turned over by him to Select Bank. According to it, Mr. Crawford never notified Select Bank of the existence of those crop insurance and government program payments prior to filing his bankruptcy petition (Dkt. 19 ¶ 97). Mr. Crawford defaulted on his payment obligations to it prior to the Petition Date. Select Bank gave notice of default and acceleration on September 8, 2020 (Dkt. 19 ¶¶ 77-78).

Select Bank contends Mr. Crawford misrepresented his ownership of certain items of farm equipment he pledged as part of the Collateral securing the loans made by Select Bank. (Dkt. 19 ¶ 85.) It also alleges Mr. Crawford transferred substantial items of farm equipment constituting its Collateral to third parties in breach of the Security Agreement, and that he has not accounted for sale proceeds received or submitted payments for application to the debt (Dkt. 19 ¶¶ 82-85).  Select Bank further contends Mr. Crawford received crop insurance and government proceeds subject to its lien that he also did not remit to Select Bank (Dkt. 19 ¶ 89-101.)

The Amended Complaint includes the following claims for relief:

Claim I: Exception to Discharge for Obtaining Money or Credit by False Pretenses, False Representation, or Actual Fraud, 11 U.S.C § 523(a)(2)(A);

Claim II: In the Alternative, Exception to Discharge for Obtaining Money or Credit through Use of Materially False Statement in Writing, 11 U.S.C. § 523(a)(2)(B);

Claim III: Exception to Discharge for Fraud or Defalcation by Defendant While Acting in a Fiduciary Capacity, 11 U.S.C. § 523(a)(4); and

Claim IV: Exception to Discharge for Willful and Malicious Injury by Defendant to Another Entity or to the Property of Another Entity, 11 U.S.C. § 523(a)(6).

The Motion to Dismiss filed by Mr. Crawford seeks dismissal of all claims pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, challenging the "relation back" timeliness of the three new causes of action added by the Amended Complaint, contending that all new claims are filed untimely. He further maintains that even if all well-pleaded facts in this action are taken as true, Select Bank has failed to state a viable claim for relief in the Amended Complaint.

## DISCUSSION

### 1. Relation Back of New Claims

Before analyzing whether the specific claims in the Amended Complaint plead facts sufficient to survive the Motion to Dismiss under Rule 12(b)(6)[2] standards, the court must first analyze whether Claims I, II, and III of the Amended Complaint are timely filed. The Complaint asserted only a single claim for relief under § 523(a)(6), which is an exception to discharge for any debt originating from a willful and malicious injury caused by the defendant to the claimant or its property. In the Amended Complaint, Select Bank continues to assert its § 523(a)(6) claim, and adds causes of action objecting to debt dischargeability under § 523(a)(2)(A), § 523(a)(2)(B), and § 523(a)(4) (Dkt. 19).

In the Motion to Dismiss, Mr. Crawford contends the claims under § 523(a)(2) and (4) were filed untimely (Dkt. 23) and consequently, must be deemed waived. A creditor asserting its claims are excepted from discharge under § 523(a)(2), (4), or (6) must seek a determination by the court of such an exception pursuant to § 523(c). Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rule(s)") 4007(c) provides that a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The first date set for the meeting of creditors in the underlying chapter 12 case was scheduled for July 23, 2021 (Case No. 21-01296-5-JNC Dkt. 5), and the Complaint

---

[2] Federal Rule of Civil Procedure 12(b)(6) is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012.

filed on September 21, 2021, did not include three dischargeability objection claims now-asserted as violations of § 523(a)(2)(A) and (B), and (4), namely claims I, II, and III (the "Additional Claims"). Because the Additional Claims were not raised and asserted prior to filing the Amended Complaint on February 11, 2022, long after the September 21, 2021 discharge claim bar date, Mr. Crawford argues those claims are untimely, barred, and must be dismissed (Dkt. 24). Select Bank responds that the Additional Claims relate back to the filing of the Complaint and are therefore timely (Dkt. 26).

Bankruptcy Rule 4007(e) provides that any proceeding commenced under Bankruptcy Rule 4007 is governed by Part VII of the Bankruptcy Rules, which governs adversary proceedings. Bankruptcy Rule 7015 incorporates Rule 15 of the Federal Rules of Civil Procedure into adversary proceedings, and a proceeding to determine the dischargeability of a debt is an adversary proceeding under Bankruptcy Rule 7001(6). Therefore, Rule 15(c)(1)(B) and caselaw interpretations of it are applicable in the present case.

An amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); Fed. R. Bankr. P. 7015. In applying Rule 15(c), the Fourth Circuit set forth a two-pronged analysis to determine whether an amendment relates back: " First, to relate back there must be a factual nexus between the amendment and the original complaint. Second, if there is some factual nexus an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983) (internal citations omitted). *Grattan* remains a "case of binding precedent." *McCormick v. Interkordsa, GmbH*, No. 7:05-CV-31-F, 2009 WL 2460774, *6

(E.D.N.C. Aug. 10, 2009). *See also In re E-Z Serve Convenience Stores, Inc.*, Adv. No. 04-09172, 2005 WL 4882753, at *3 (Bankr. M.D.N.C. Dec. 12, 2005).

To determine whether a sufficient factual nexus was contained in the prior pleading, a court must compare the allegations contained within the amended complaint and original complaint to see if they involve the same transaction, occurrence, or core of operative facts as involved in the complaint. *E–Z Serve Convenience Stores,* 2005 WL 4882753 at *3. "The requisite factual nexus, and therefore, 'relation back[,] depends on the existence of a common "core of operative facts" uniting the original and newly asserted claims.'" *McCormick*, 2009 WL 2460774 at *6; *quoting Mayle v. Felix,* 545 U.S. 644, 659 (2005). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. at 664.

An amended complaint will generally relate back even if it asserts new legal theories of recovery based on the same transactions or occurrences. *In re E–Z Serve Convenience Stores, Inc.,* 2005 WL 4882753 at *4. "The Majority of cases which we have reviewed which construed § 523 and § 727 complaints held that an amendment can only relate back if the new claim relies on the same facts and does not seek to insert new facts." *In re Mango*, 216 B.R. 34,41 (B.A.P. 9th Cir. 1997); *see also In re Gerardo Leasing.*, 173 B.R. 379 (Bankr. N.D.Ill. 1994).

Consequently, amended claims based on previously unidentified transactions may relate back if these transactions are part of a common scheme or pattern. The amendment may be insufficient to relate back to the time of the original complaint if different operative facts implicated different time frames and different conduct.

> If the original pleading adequately identifies the factual circumstances out of which the amended claim arises, the amendment will relate back. However, if an "amendment states an entirely new claim for relief based upon a different set of facts, [it] will not relate back." Courts have construed Rule 15 narrowly in the

context of a plaintiff who seeks the nondischargeability of a debt. Although courts have allowed amendments which add Section 727 or Section 523 causes of action after the sixty-day deadline, these amendments relied only on the facts plead in the original complaint, and added no new factual allegations. An amended complaint that 'sets forth a separate set of operative facts' does not relate back under Rule 15(c).

*In re DeBerry*, No. 09-12428, 2012 WL 1463598, at *7 (M.D.N.C. Apr. 27, 2012) (internal citations omitted); *quoting In re Khafaga*, 431 B.R. 329, 334 (Bankr. E.D.N.Y. 2010).

*In re Khafaga*, is relevant to the present case. 431 B.R. 329 (Bankr. E.D.N.Y. 2010). There, the court stated that the original complaint set forth conduct allegedly committed by the defendant in violation of a franchise agreement *after* the defendant began operating its franchise. *Id*. at 335. In contrast, the amended complaint was based on allegedly fraudulent conduct committed *prior* to the execution of the franchise agreements. "The factual discrepancies between the original and amended claims—different time frames, different alleged conduct, and different operative facts—preclude a finding that the amended claim relates back." *Id*.

Comparing, contrasting, and examining the facts and allegations in the Complaint with those in the Amended Complaint, the court finds that the three additional claims in the Amended Complaint relate back to filing of the Complaint in regards to Mr. Crawford's alleged transfers of collateral, misrepresentations, and concealment of proceeds *after* he obtained the loans from Select Bank. However, as the three additional claims relate to Mr. Crawford's conduct *prior to* obtaining the loans from Select Bank, the court finds that the three Additional Claims in the Amended Complaint do not relate back to the filing of the Complaint because they are not based on the same "common core of operative facts" sufficient to create a factual nexus between the Amended Complaint and the Complaint.

Select Bank's allegations in the Amended Complaint with respect to Mr. Crawford's misrepresentations or fraudulent activity in obtaining the Term Note and Credit Line Note from Select Bank include (as paraphrased):

- In connection to his loan request, Mr. Crawford provided a list of farm equipment he purportedly owned and could pledge as collateral (Dkt. 19 ¶ 11).

- In reliance on Mr. Crawford's representations, Select Bank hired Blue Water Ag Group, Inc. ("Blue Water Ag") to inspect and appraise the farm equipment Mr. Crawford offered as collateral (Dkt. 19 ¶ 13).

- In reliance on Mr. Crawford's representations concerning equipment ownership, Select Bank offered him the Term Note (Dkt. 19 ¶ 17).

- Mr. Crawford executed the 2017 Security Agreement which granted Select Bank a security interest in his equipment (Dkt. 19 ¶ 24), whereby he warranted he owned all the Collateral (Dkt. 19 ¶ 26).

- In reliance on Mr. Crawford's representations concerning equipment ownership, Select Bank offered him the Credit Line Note (Dkt. 19 ¶ 38).

- Mr. Crawford executed the 2018 Security Agreement which granted Select Bank an additional security interest in his equipment (Dkt. 19 ¶ 45), whereby he warranted he owned all the Collateral (Dkt. 19 ¶ 47).

- Select Bank hired Dale W. Young to re-inspect and re-appraise the farm equipment in the 2017 Appraisal. Mr. Crawford was present during that appraisal and represented to Dale Young that he owned the subject equipment (Dkt. 19 ¶ 62-66).

- Mr. Crawford admitted for the first time during his Rule 2004 Examination in a related proceeding, *In re Crawford Swine Farms*, LLC, EDNC Bankr. Case No. 20-03723-5-JNC, that certain items of farm equipment in his possession were not owned by him, some of which was included in the equipment appraisals in 2017 and 2020 (Dkt. 19 ¶¶ 84-85).

In contrast, Select Bank's allegations in the Complaint with respect to Mr. Crawford's misrepresentations or fraudulent activity in obtaining the Term Note and Credit Line Note from Select Bank include (as paraphrased):

- As security for the 2017 Term Loan, Mr. Crawford executed a commercial security Agreement granting Select Bank a security interest in, among other things, "equipment, including all accessories and additions…." (Dkt. 1 ¶ 9).

- As security for the Credit Line Note, Mr. Crawford executed a commercial security Agreement granting Select Bank a security interest in the Collateral (Dkt. 1 ¶ 15).

- Before execution of the 2017 Term Loan or the Credit Line Note, Select Bank hired Blue Water Ag to provide an appraisal of the Equipment Collateral. They appraised the Equipment Collateral to have an aggregate fair market value of $1,021,750 (Dkt. 1 ¶ 23).

The original Complaint lacked detail about any misrepresentations made by Mr. Crawford to Select Bank that resulted in his obtaining the Term Note and Credit Line Note. The Amended Complaint includes detailed and new additional facts regarding the same, but rather than elaborating, clarifying, and strengthening original fact allegations in the Complaint, the Amended Complaint adds numerous new and additional facts to support a new theory of liability (obtaining credit by fraud rather than diversion of assets or defalcation). At most, the Complaint alleges Select Bank received a security interest in Mr. Crawford's farm equipment and that the equipment was appraised prior to Term Note extension. The four delineated claims in the Amended Complaint do not show a factual nexus with the Complaint sufficient to relate back and include Mr. Crawford's actions, conduct, or misrepresentations made *prior to* obtaining the Credit Line Note on February 21, 2018. Therefore, nondischargeability for any of the four Amended Complaint claims based on this limited theory cannot proceed without prejudice to Mr. Crawford given the timing of the discharge objection bar date.

However, this is not the end of the discussion. Even after setting aside Mr. Crawford's alleged conduct procuring and obtaining the Term Note and Credit Line Note occurring *prior* to February 21, 2018, the Complaint contains numerous and specific fact allegations for the period *after* February 21, 2018 to form a sufficient nexus with the more detailed set of factual allegations and additional statutory dischargeability exceptions asserted in the causes of action contained in the Amended Complaint. The Complaint placed Mr. Crawford on notice that Select Bank also sought dischargeability relief due to his alleged improper transfers of equipment and retention of

cash proceeds (with pleadings of specific examples) after February 21, 2018 in servicing, paying and abiding by the terms of credit given instead of obtaining that credit. Therefore, the factual allegations concerning the post-February 21, 2018 events contained in the Amended Complaint relate back under Rule 15(c) and can be considered in analyzing whether the additional statutory grounds for nondischargeability otherwise survive a standard Rule 12(b)(6) analysis.

### The Standard for Dismissal Pursuant to Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint must be accepted as true. *E.I. du Pont de Nemours &Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011), and the complaint must be considered in its entirety. *In re Warren*, 486 B.R. 704, 708 (D.S.C. 2013); *citing Harman v. Unisys Corp.*, 356 Fed.Appx. 638, 641 (4th Cir. 2009).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court of the United States held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Court elaborated in *Ashcroft v. Iqbal* that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S. Ct. 1937, 1949 (2009); *see also Adcock v. Freightliner, LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (mere legal conclusions do not warrant automatic assumption of truth by the court). The allegations must be more than a "formulaic recitation of the elements" of a claim. *Iqbal,* 129 S. Ct. at 1951. A claim has facial plausibility when the plaintiff pleads enough "factual content to

allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a plausible claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims.

### Claim I: Exception to Discharge Under Section 523(a)(A) for Obtaining Money or Credit by False Pretenses, False Representation, or Actual Fraud

Bankruptcy Code Section 523(a)(2)(A) provides, in pertinent part, for an exception from discharge "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The elements of a claim for nondischargeability under § 523(a)(2)(A) are: "(1) false representation, (2) knowledge the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 334 (4th Cir. 2013) *quoting Nunnery v. Rountree* (*In re Rountree*), 478 F.3d 215, 218 (4th Cir. 2007).

Select Bank alleges that after receiving the 2017 Loan and 2018 Credit Line, Mr. Crawford continued to misrepresent and conceal his ownership of farm equipment which allowed him to "collect, retain and utilize significant sums of money in the form of the Insurance and Program Payments." (Dkt. 19 ¶ 121). The Security Agreements required Mr. Crawford to "not sell…or otherwise transfer or encumber the Collateral without [Select Bank's] prior written consent…"

(Dkt. 19 ¶ 27), and that he would collect all accounts in the ordinary course of business and not commingle those proceeds with any of his other property (Dkt. 19 ¶ 28).

An omission can constitute a representation for purposes of nondischargeability, especially if the circumstances create a false impression that the defendant is aware of. *See In re Booker*, 165 B.R. 164, 169 (Bankr. M.D.N.C. 1994). Mr. Crawford allegedly transferred pieces of the Collateral and received crop insurance and government proceeds that may have amounted to hundreds of thousands of dollars. The Amended Complaint alleges that Mr. Crawford's ongoing misrepresentations and concealment of both his ownership of farm equipment and his lack of compliance with loan obligations allowed him to receive significant sums of money (Dkt. 19 ¶ 121). Additionally, Select Bank contends that it "reasonably relied upon the truthfulness and accuracy of the information tendered from Defendant in arriving at its decision to extend credit through the Term Note, the Credit Line Note, the Extension, the Modifications, and the other Loan Documents." (Dkt 19 ¶ 128).

Intent, being a state of mind, can be a difficult element to prove. *In re Howard*, 12–02634–8–RDD, 2013 WL 3725155, at *5 (Bankr. E.D.N.C. July 15, 2013). "Because direct proof of intent is seldom available, the court in a dischargeability proceeding may infer the debtor's intent or lack of intent from the surrounding facts and circumstances." *In re Lammana*, Case No. 11–02052–8–SWH, 2012 WL 909652 at *3 (Bankr. E.D.N.C. March 15, 2012); *quoting Riddle Farm Equip., Inc. v. Boles* (*In re Boles*); 2005 WL 1288106, *4 (Bankr.M.D.N.C. Apr. 11, 2005). Select Bank alleges  Mr. Crawford never disclosed or notified it that he received at least $758,869 in aggregate crop insurance proceeds and government program payments during the years of 2019 and 2020, all of which were subject to Select Bank's liens. (Dkt. 19 ¶ 93). Select Bank contends Mr. Crawford continued to misrepresent his ownership of certain items of equipment Collateral

after he received the loans. It alleges that Mr. Crawford was present during Dale Youngs 2020 Appraisal, and that Mr. Crawford represented that he owned the inspected equipment (Dkt. 19 ¶¶ 64-65). He later stated during his Rule 2004 Examination that, despite his representations, he did not own all the pieces of farm equipment in his possession. (Dkt. 19 ¶ 85).

In summary, Select Bank alleges that it relied on Mr. Crawford's representations about his ownership of the interest in granting him further modifications and extensions. It maintains that the allegations show that had Mr. Crawford disclosed the true state of affairs, that he did not own equipment posted as Collateral and he was receiving thousands of dollars of farm and insurance payments, Select Bank maintains that it would have sent notices of default before September 8, 2020 and thereby recovered more on its  Collateral.  If proven true, Select Bank would meet its burden to show Mr. Crawford's misrepresentations and omissions knowingly created a false impression resulting in damage to the secured creditor. Therefore, at this stage of the litigation, the set of facts contained in the Amended Complaint state a plausible claim for relief as to nondischargeability under § 523(a)(2)(A) of at least a material portion of the debt owed by Mr. Crawford.  The Motion to Dismiss Claim I of the Amended Complaint is accordingly denied.

### Claim II: In the Alternative, Exception to Discharge for Obtaining Money or Credit through Use of Materially False Statement in Writing

Bankruptcy Code section 523(a)(2)(B) provides for an exception to discharge of any debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…use of a statement in writing that is materially false; respecting the debtor's or an insider's financial condition; on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and that the debtor caused to be made or published with intent to deceive." 11 U.S.C § 523(a)(2)(B).

A statement is made "respecting" the debtor's financial condition "if it has a direct relation to or impact on the debtor's overall financial status." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1761 (2018). Disregarding any possible false written statements Mr. Crawford may have made in order to obtain the 2017 Term Loan and 2018 Credit Line Loan, Select Bank contends that Mr. Crawford obtained additional extensions and modifications of the credit evidenced by those Loans as a direct result of materially false written statements (Dkt. 19 ¶ 132). In the five additional extensions and modifications Mr. Crawford signed in 2019 and 2020, he acknowledged that he was:

> Bound by the terms of the instruments and prior modifications, extensions, and supplements evidencing the Existing Debt as if they were fully set forth and repeated in this Agreement and that those terms will continue to bind the Parties as provided in this Agreement and those instruments.

(Dkt. 19 ¶¶ 34 and 61). The "instruments" referred to include the 2017 and 2018 Security Agreements whereby Mr. Crawford agreed to not sell or transfer the Collateral, (Dkt. 19 ¶¶ 27, 48) and to collect all proceeds of accounts for Select Bank without commingling it with his own (Dkt. 19 ¶¶ 28, 49). Select Bank alleges it reasonably relied on Mr. Crawford's representations that he was in compliance with previous loan documents by continuing to modify and extend his loans. Notably, it particularly alleges that Mr. Crawford received two crop insurance payments of $171,324 and $44,334 only a day or two prior to signing the Third and Fourth Modifications of the Credit Line Note respectively (Dkt. 19 ¶ 119-121). The alleged omission and failure to account for the existence of those funds, along with other relevant fact allegations, supports a plausible claim that Mr. Crawford made a knowing and materially false statement to Select Bank respecting his financial condition.

Reasonable reliance is determined case-by-case on a totality of circumstances. *In re Adams*, 312 B.R. 576, 585 (Bankr. M.D.N.C. 2004); *citing In re Copeland*, 291 B.R. 740, 784 (Bankr. E.D.Tenn. 2003). Here, Select Bank alleges that it continued to grant extensions and modifications to Mr. Crawford in reliance on his false written statements (Dkt. 19 ¶ 136). Mr. Crawford may have known that Select Bank's decision to grant him modifications and extensions was made partly in reliance on his statements reaffirming that he remained bound by prior instruments and his failure to disclose his ownership of equipment and receipt of insurance and government program payments. *See In re Davis*, 262 B.R. 673, 680 (Bankr. E.D.V.A. 2001); *citing In re Coughlin*, 27 B.R. 632, 637 (1st Cir. BAP 1983) ("The reasonable reliance requirement is often satisfied by evidence that the credit would not have been extended if accurate financial information had been disclosed."). Select Bank has alleged sufficient facts regarding its reasonable reliance.

Direct evidence of a defendant's intent to deceive is not required under § 523(a)(2)(B) and may be inferred from surrounding circumstances, including the debtor's knowledge of or reckless disregard for the accuracy of his financial statements. *In re Dalton*, 205 F.3d 1332 (Table), 2000 WL 191850, at *3 (4th Cir. Feb. 17, 2000); *see also In re Boyd*, 525 B.R. 299, 306 (Bankr. M.D.N.C. 2015). Select Bank alleges that over several years, Mr. Crawford repeatedly signed financial documents stating that he owned certain farm equipment, would not transfer his equipment outside the ordinary course of business, and any proceeds of accounts he had would be held for Select Bank's benefit, all while doing exactly what he promised not to do during the same period. Taken as true, the Amended Complaint alleges sufficient circumstances for the court to find it plausible that Mr. Crawford acted with the intent to deceive.

Taking the factual allegations in the Amended Complaint as true, Select Bank asserts a plausible claim under 523(a)(2)(B).  Therefore, the Motion to Dismiss Claim II of the Amended Complaint is denied.

### Claim III: Exception to Discharge for Fraud or Defalcation by Defendant While Acting in a Fiduciary Capacity

Section 523(a)(4) provides that a debt incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is excepted from discharge. The Amended Complaint alleges that 2017 and 2018 Security Agreements created "an express trust and fiduciary relationship" between Mr. Crawford and Select Bank whereby Mr. Crawford "was obligated to collect the proceeds of any 'accounts' in the ordinary course of business and hold those proceeds 'in trust' for the benefit of the Plaintiff." (Dkt. 19 ¶ 142). The Security Agreements defined the term "accounts" to include proceeds from crop insurance, government programs, or the transfer of Select Bank's collateral (Dkt. 19 ¶ 144). Select Bank alleges Mr. Crawford's failure to collect and hold the proceeds of all "accounts" for the benefit of Plaintiff is a breach of the express trust established between the parties and constitutes defalcation while acting in a fiduciary capacity with respect to those funds." (Dkt. 19 ¶ 154).

"Defalcation" under 523(a)(4) requires a "finding of at least an 'intentional wrong' or in the absence of an intentional wrong, a finding that 'the fiduciary "consciously disregards" a 'substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *In re Ogden*, Case No. 14-00286-5-DMW, at *4 (Bankr. E.D.N.C. Dec. 21, 2015); *quoting Bullock v. Bankchampaign, N.A*, 133 S.Ct. 1754, 1759 (2013). A fiduciary relationship as contemplated by § 523(a)(4) does not exist when an express or technical trust did not exist prior to the misappropriation of funds. *In re Sorge*, 566 B.R. 369, 378 (Bankr. E.D.N.C. 2017); *citing Camp Flintlock, Inc. v. Stephenson* (*In re Stephenson*), Adv. Pro. No. 12-00228, 2013 WL 593900, at *5

(Bankr. E.D.N.C. Feb. 15, 2013). A technical trust may only be created by agreement between the parties or by a statute that specifically imposes fiduciary obligations. *See Ronk v. Maresh* (*In re Maresh*), 277 B.R. 339 (Bankr. N.D. Ohio 2001); *Peoples Bank & Tr. Co. of Hazard v. Penick* (*In re Penick)*, 199 B.R. 16 (Bankr. E.D. Ky. 1996). "In North Carolina, a trust is a legal relationship between persons that can be expressly agreed upon in writing, words or by definite conduct." *In re Wells*, 431 B.R. 379, 382 (Bankr. E.D.N.C. 2009). It requires a segregated trust res and affirmative trust duties. *Matter of Storms*, 28 B.R. 761, 764 (Bankr. E.D.N.C. 1983); *citing Angelle v. Reed* (*In re Angelle*), 610 F.2d 1335, 1340 (5th Cir. 1980). "However, the mere existence of an agreement between parties that purports to create a trust or impose trust-like duties does not impose fiduciary responsibility." *Matter of Storms*, 28 B.R. at 764. Such an agreement to hold funds "as trustee" or "for" another might be refuted by the respective parties' history of actions. *Id*.; *citing Snap-On Tools Co. v. Rigsby* (*In re Rigsby*), 18 B.R. 518 (Bankr. E.D.Va. 1982); *General Electric Credit Corp. v. Graham* (*In re Graham*), 7 B.R. 5 (Bankr. D.Nev. 1980).

Here, Select Bank pleads that the Security Agreements created an express trust prior to Mr. Crawford's alleged misappropriation of the funds. Whether a trust was actually created is a question of fact and not a legal question determinable at this stage of the proceeding because determining whether the actions of the parties may have negated or refuted such a trustor-trustee relationship will require further findings of fact. *See Matter of Storms*, 28 B.R. at 764.  Select Bank, however, has alleged several specific receipts and diversions of insurance and government program payments they argue Mr. Crawford was bound to hold in trust for it. Instead of doing so, it contends Mr. Crawford deposited the money into his own account and used it as his own. The Amended Complaint alleges sufficient facts and circumstances to state a plausible claim under § 523(a)(4). Therefore, the Motion to Dismiss Claim III of the Amended Complaint is denied.

**Claim IV: Exception to Discharge for Willful and Malicious Injury by Defendant to Another Entity or to the Property of Another Entity, 11 U.S.C. § 523(a)(6)**

Damages caused by willful and malicious injury are nondischargeable. Section 523(a)(6) provides, in pertinent part: "(a) A discharge under Section 727, 1141, 1228(a), 1228(b) or 1328(b) does not discharge an individual debtor from any debt (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998); *See also In re Muhs*, 923 F.3d 377, 385 (4th Cir. 2019), *cert. denied sub nom*. "To qualify as malicious, the debtor must have acted with substantial certainty that harm would result or with a subjective motive to cause harm." *In re Coley*, 609 B.R. 298, 311 (Bankr. E.D.N.C. 2019), *citing In re Cobham*, 528 B.R. 283 (Bankr. E.D.N.C. 2015).

Select Bank alleges Mr. Crawford's actions evidenced a "malicious and self-serving intent to benefit his own financial interests by concealing and excluding [Select Bank] from exercising its rights and remedies in the proceeds of the Converted Equipment, Missing Equipment, and Insurance and Program Payments." (Dkt. 19 ¶ 176). It contends Mr. Crawford sold or otherwise disposed of items of Collateral (Dkt. 19, ¶ 164) and "collected, received, concealed, and utilized" insurance and government program payments he was obligated to remit to Select Bank (Dkt. 19 ¶¶ 165-69) despite being aware that he was violating Select Bank's contractual rights by not doing so (Dkt. 19 ¶ 175).

**Willful**

In a conversion of collateral case, a willful injury occurs when collateral is disposed of and its proceeds are used for a purpose other than repayment of the debt. *In re Buck*, 406 B.R. 703, 706

(Bankr. E.D.N.C. 2009); *citing In re Rountree*, case no. 00-12684C-76, 01-2003, 2002 WL 832669, at *7 (Bankr. M.D.N.C. May 1, 2002). Mr. Crawford signed the 2017 and 2018 Security Agreements, which granted Select Bank security interests in the Collateral (Dkt. 19, ¶¶ 24-27, Ex D; ¶¶ 45-48, Ex. I). By signing those documents, Mr. Crawford acknowledged he would "not sell, offer to sell, license, lease, or otherwise transfer or encumber the [Collateral] without [Select Bank's] prior written consent," and that doing so would violate Select Bank's rights. The Amended Complaint provides the dates and amounts of transfers Mr. Crawford received and deposited proceeds into his own account in violation of Select Bank's security interest, including $171,324 of Insurance and Program Payments one day prior to executing the Third Modification (Dkt. 19 ¶ 99); $44,334 of insurance and government program two days before executing the Fourth Modification (Dkt 19 ¶ 100); and $58,852.78 of insurance and program payments after Select Bank mailed him demand letters and notices of default on September 8, 2020 (Dkt. 19 ¶101). These allegations state a plausible claim Mr. Crawford's actions were willful.

**Malicious**

It is the injury, and not the act giving rise to the injury, that must be intended by the debtor in order for the debt arising from the injury to be nondischargeable under 523(a)(6). *In re O'Quinn*, 374 B.R. 171, 182 (Bankr. M.D.N.C. 2007); *citing Geiger*, 523 U.S. at 60-64. However, "malicious" does not equate with malice or ill will, but rather with a "deliberate" or intentional" injury that is "wrongful and without cause or excuse." *In re Vito*, 598 B.R. 809, 825 (Bankr. D.Md. 2019); *citing Craig v. Corbin*, No. GJH-15-2656, 2016 WL 4082628, at *9 (D.Md. July 7, 2016), *First Nat'l Bank of Maryland v. Stanley* (*In re Stanley*), 66 F.3d 664, 667 (4th Cir. 1995), *et al*. It is the debtor's subjective state of mind that is relevant, and malice can be found implicitly through the "acts and conduct of the debtor in the context of the surrounding circumstances." *In re Estrin*,

C/A No. 14-04795-DD, 2016 WL 691506, at *15 (Bankr. D.S.C. Feb. 19, 2016); *quoting First Nat'l Bank of Maryland, v. Stanley*, 66 F.3d at 668.

As specified in the examples related in the "Willful" section above, Select Bank asserts Mr. Crawford knowingly and intentionally deposited into his own bank account the substantial sum of money received from insurance payouts, government programs, and the transfer of farm equipment, despite his acknowledgement in the 2017 and 2018 Security Agreements that Select Bank held a lien on the funds and he was required to remit the same. The Amended Complaint highlights that Mr. Crawford repeatedly signed modifications and extension agreements on the Select Bank loans, which stated he remained "bound by the terms of the instruments and prior modifications," (Dkt. 19 ¶ 61).

An injury is malicious under § 523(a)(6) if it is inflicted "in knowing disregard of the rights of another." *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985). Mr. Crawford's decades of farming and business experience coupled with the specific and repeated transfers of insurance proceeds mere days before renewing Select Bank's documents and acknowledging its lien rights make it plausible that he knew those actions were harmful to the lender. Mr. Crawford argues that Select Bank alleges nothing more than a claim for breach of contract (Dkt. 24), which alone does not satisfy § 526(a)(6). *See In re Walker*, 416 B.R. 449, 468 (Bankr. W.D.N.C. 2009); *citing Strum v. Exxon Co.*, 15 F.3d 327 (4th Cir. 1994). However, a breach of contract "accompanied by some conduct that is legally wrongful or tortuous," such as willful conversion, could satisfy § 523(a)(6). *Id*. At this stage of the litigation, the court cannot rule as a matter of law that Select Bank cannot prove that Mr. Crawford's alleged transfers of equipment and disposal of proceeds were not both willful and malicious. Taking its factual allegations as true, Claim IV of the Amended Complaint states a plausible claim under 523(a)(6).

Accordingly, the motion to dismiss Claim IV is denied.

## CONCLUSION

The Amended Complaint alleges facts sufficient to support plausible claims for nondischargeability of debt for Clams I, II, III, and IV that survive challenge under Rule 12(b)(6). The Motion to Dismiss is DENIED, with the limited exception of no relation back for conduct occurring prior to February 21, 2018, in procuring and obtaining the Term Note and Credit Line Note as found on page 11 above.  Respective counsel are directed to file a new joint proposed scheduling report with the court in standard form within fourteen (14) days of the date of this Order.

## END OF DOCUMENT